UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY RADER,

    Plaintiff,

v.

DITECH FINANCIAL, LLC,
CITIMORTGAGE, INC.,
FEDERAL HOME LOAN MORTGAGE
CORPORATION
    Defendants.

Case No. 17-13566
Honorable Laurie J. Michelson
Magistrate Judge Stephanie Dawkins Davis

**OPINION AND ORDER
GRANTING DITECH FINANCIAL AND FEDERAL HOME LOAN MORTGAGE
CORPORATION'S AND CITIMORTGAGE'S MOTIONS TO DISMISS [19, 20]**

Jeffrey Rader's home was foreclosed upon. He challenges the validity of that foreclosure based on alleged procedural errors and the improper handling of his loan modification. He names as defendants one of the banks that owned the mortgage prior to the foreclosure, CitiMortgage (CMI); the entity that foreclosed on the property, Ditech Financial; and the assignee of the deed to the property after the foreclosure, Federal Home Loan Mortgage Corporation (Freddie Mac).

All defendants now move to dismiss. For the reasons that follow, both Ditech and Freddie Mac's motion to dismiss (ECF No. 19) and CMI's motion to dismiss (ECF No. 20) will be granted without prejudice to Rader filing an amended complaint, if warranted, on his RESPA claims against Ditech and Freddie Mac.

**I.**

Jeffrey Rader and his then-wife Tina Rader purchased a home located on Wildcat Road in Croswell, Michigan. (ECF No. 1, PageID.11–12.) When the two divorced, she quitclaimed the deed to Rader. (ECF No. 1, PageID.12–13.)

In October 2014, Rader borrowed $152,000 and secured the loan with a mortgage on the property. (ECF No. 1, PageID.13.) That mortgage was assigned to Flagstar Bank. (ECF No. 1, PageID.13.) Flagstar then assigned the mortgage to CMI, and CMI assigned the mortgage to Ditech. (ECF No. 1, PageID.14.)

After making his payments on the mortgage for several years, Rader fell on hard times and was temporarily unable to make his payments. (ECF No. 1, PageID.14–15.) Rader alleges that he applied for and was granted a loan modification and made all of his trial period payments. (ECF No. 1, PageID.15.) Still, Ditech moved forward and foreclosed on his property. On April 6, 2017, Ditech purchased the property at a sheriff's sale and then issued a quitclaim deed to Freddie Mac. (ECF No. 1, PageID.14.)

On the last day of the redemption period, Rader sued in state court challenging the foreclosure under state and federal law. (ECF No. 1, PageID.7.) Defendants removed the action to federal court. (*See* ECF No.1.) They now all move to dismiss the complaint. (ECF No. 19, 20.)

**II.**

When a defendant moves to dismiss pursuant to Rule 12(b)(6), the plausibility standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), governs. Under that standard, a court first culls legal conclusions from the complaint, leaving only factual allegations to be accepted as true. *Iqbal*, 556 U.S. at 679. The inquiry then becomes whether the remaining assertions of fact "allow[] the court to draw the reasonable inference that the defendant is liable[.]" *Id.* at 678. Although this plausibility threshold is more than a "sheer possibility" that a defendant is liable, it is not a "'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). Whether a plaintiff has presented enough factual matter to "'nudg[e]'" his claim "'across the line from conceivable to plausible'" is "a context-specific task"

2

requiring this Court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 683 (quoting *Twombly*, 550 U.S. at 570).

On a motion to dismiss, the court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

## III.

### A.

The Court will start with Ditech and Freddie Mac's motion.[1]

### 1.

Rader asserts that the foreclosure should be invalidated because Ditech and Freddie Mac failed to comply with Michigan's foreclosure-by-advertisement law, Mich. Comp. Laws § 600.3204, *et seq*.

As Ditech and Freddie Mac argue, Rader is greatly curtailed in how he can challenge his foreclosure because the redemption period has expired. (ECF No. 19, PageID.326–330.) Indeed, all of his rights in the property were extinguished. *See Bryan v. JPMorgan Chase Bank*, 848 N.W.2d 482, 485 (Mich. Ct. App. 2014). And once his property rights were extinguished, Rader can only challenge his foreclosure with "a clear showing of fraud, or irregularity" in the foreclosure procedure itself. *See Conlin v. Mort. Electronic Registration Sys., Inc.*, 714 F.3d 355, 359–60 (6th

---

[1] The Defendants argue that Rader fails to plead with sufficient particularity as required under Federal Rule of Civil Procedure 8(a)(2) because his claims are pled against all "Defendants" without specifying what each Defendant did. But because of the interest each entity held or holds in the subject property, it is clear which claims apply to which Defendants. Indeed, Defendants' briefing shows each has been able to identify the claims that pertain to it. So the Court will not dismiss the complaint on this basis.

Cir. 2013) (internal quotations omitted). Also, in order to have the foreclosure set side, Rader must demonstrate that he was prejudiced by the fraud or irregularity—that is, that he would have been in a better position to preserve his interest in the property absent the alleged noncompliance. *See Conlin*, 714 F.3d at 361.

Rader argues that because he filed suit on the final day of the redemption period "he was still within his statutorily granted period to exercise his right to the property and challenge the foreclosure." (ECF No. 34, PageID.525.) But filing a lawsuit does not toll the running of the redemption period. *Conlin*, 714 F.3d at 360; *Rishoi v. Deutsche Bank Nat. Trust Co.*, 552 F. App'x 417, 421 (6th Cir. 2013). So even though Rader filed within the redemption period, because he did not redeem within that period, Rader must still make "a clear showing of fraud, or irregularity" in the foreclosure procedure and show that he was prejudiced by that irregularity.

Rader makes a number of arguments for why the foreclosure sale should be set aside. None satisfy these showings.

He first alleges that the foreclosing entity, Ditech, failed to comply with Michigan Compiled Laws § 600.3204(1)(d) because it did not own the note, did not own an interest in the note, and was not the servicer of the mortgage. (ECF No.1, PageID.17.)

Rader's allegations and public records show that this argument is not plausible. Rader specifically alleges that Ditech was the servicer of the mortgage. (ECF No. 1, PageID.14.) He further alleges that the mortgage was assigned from Flagstar to CMI and from CMI to Ditech. (*Id.*) This is consistent with the documents from the Sanilac County Register of Deeds, which show that Flagstar assigned the mortgage to CMI in October 2014, that CMI assigned the mortgage to Ditech in August 2016, that Ditech registered the sheriff's deed in April 2017, and that Ditech assigned a quitclaim deed to Freddie Mac in June 2017. Sanilac County Register of Deeds,

https://rod.sanilaccounty.net (last visited Nov. 20, 2018). Under Michigan's foreclosure-by-advertisement statute, the servicing agent of the mortgage is authorized to foreclose. *See* Mich. Comp. Laws § 600.3204(1)(d). So "[b]ecause [Rader's] complaint, viewed in conjunction with the public record, does not include 'enough facts to raise a reasonable expectation that discovery will reveal evidence' of the [alleged failure to comply with Mich. Comp. Laws § 600.3204(1)(d)], it fails to meet the plausibility standard." *See Gavitt v. Born*, 835 F.3d 623, 645 (6th Cir. 2016) (citing *Twombly*, 50 U.S.at 556).

Next, Rader says his foreclosure sale should be set aside because Ditech failed to properly calculate the amount claimed to be due on the notice of foreclosure "by including amounts not rightfully incurred including late fees, attorney fees, maintenance fees, BPO/appraisal fees, title fees, publication fees and posting fees, among other fees and costs wrongfully included." (ECF No. 1, PageID.21.)

But even if Ditech failed to property calculate the amount due, Rader does not plead how he was prejudiced by this error. *See Beard v. HSBC Mortg. Servs., Inc.*, No. 15-1232, 2016 WL 3049310, *3 (W.D. Mich. May 31, 2016). He does not plead facts that suggest that he would have been able to pay the properly-calculated amount such that he would have been in a better position to preserve the interest in his home. So this claim fails.

Rader also says the foreclosure should be set aside because Ditech failed to send him a notice of default as required under the terms of his mortgage. (ECF No. 1, PageID.17–18.) But again, claims of fraud or irregularly have to be based on the foreclosure procedure itself, not on an alleged breach of a mortgage term. *See Haskins v. Wilmington Savings Fund Society, Fsb*, No. 16-941, 2017 WL 1396149, *4 (W.D. Mich. Jan. 5, 2017) ("Plaintiffs allege Wilmington Savings failed to provide the notice of default required by paragraph 21 of the mortgage. Even if true, this

claim does not provide a basis for setting aside the foreclosure because the claim would not establish a fraud or irregularity in the foreclosure proceedings."); *Williams v. U.S. Bank Nat'l Ass'n*, No. 15-14363, 2016 WL 3015091, *3 (E.D. Mich. May 26, 2016) (treating failure to provide a pre-acceleration notice of default as a breach-of-contract claim and not a claim about the fraud or irregularity in the foreclosure itself); *Beard*, 2016 WL 3049310, at *2–5 (discussing distinction between a failure to provide a notice pursuant to Michigan foreclosure law and a failure to provide a notice pursuant to the mortgage).

Additionally, Rader has failed to plead that he would have been in a better position to preserve his interest in the property had he received this notice. *See Goodman v. Citimortgage, Inc.*, No. 15-12456, 2015 WL 6387451, *3 (E.D. Mich. Oct. 22, 2015); *Garrow v. JPMorgan Chase Bank, N.A.*, No. 15-14058, 2016 WL 284066, *4 (E.D. Mich. April 27, 2016). And, as explained below, Rader failed to defend his mortgage-based claims in his response. So they will be dismissed for this reason as well. *See Pientack v. JPMorgan Chase Bank, N.A.*, No. 12-12435, 2013 WL 5372880, at *6 (E.D. Mich. Sept. 25, 2013) (citing *Scott v. State of Tenn.*, 878 F.2d 382, at *2 (6th Cir.1989) (table decision)).

Lastly, Rader complains that Ditech foreclosed while he was pursuing foreclosure alternatives. (ECF No. 1, PageID.18.) This too is not a basis to set aside the foreclosure. "Dual-tracking allegations do not constitute allegations of irregularities in the foreclosure process, as required to set aside a foreclosure by advertisement." *Buttermore v. Nationstar Mortg. LLC*, No. 16-14267, 2017 WL 2306446, at *7 (E.D. Mich. May 26, 2017) (collecting cases).

As Rader has failed to sufficiently plead claims of fraud or irregularity in the foreclosure process, his challenge to the validity of the foreclosure under Michigan law fails to state a claim.

**2.**

Next, Ditech and Freddie Mac argue that Rader has failed to sufficiently plead his causes of action under Regulation X, 12 CFR § 1024.41, enforceable pursuant to the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605. The Court agrees.

The Court first notes that Rader's Regulation X claims will not invalidate the foreclosure. Regulation X can only be enforced pursuant to RESPA, *see* 12 C.F.R. § 1024.41, which limits relief for individuals to actual damages, and "in the case of a pattern and practice [violation,]" statutory damages in an amount not to exceed $2,000. 12 U.S.C. § 2605(f). "A complaint must allege 'facts showing that damages occurred' as a result of the alleged [RESPA] violations." *Mrla, v. Fed. Nat'l Home Mortg. Ass'n*, No. 15-13370, 2016 WL 3924112, at *3 (E.D. Mich. July 21, 2016) (citing *Drew v. Kemp-Brooks*, 802 F. Supp. 2d 889, 898 (E.D. Mich. 2011)). "Naked claims of damages, unconnected to such facts, are not enough to state a claim." *Id*.

With respect to RESPA, Rader alleges the following: (1) Ditech failed to provide him with notice that he was not eligible for any loss mitigation options, (2) he never rejected any offered loss mitigation option, (3) he never failed to perform under any agreement on a loss mitigation option, (4) he provided all requested documents, (5) the foreclosure was first published when the parties were still "actively engaged in loan modification and making their TPP," (6) the foreclosure proceeded even though a loan modification agreement had been reached between the parties and Rader was in good standing under the loan modification agreement, and (7) that Ditech initiated foreclosure proceedings less than 120 days from Rader's alleged delinquency. (ECF No.1, PageID.20–21.) Rader also generally alleges that "[Ditech] engaged in a pattern or practice of non-compliance with RESPA's mortgage-servicer provisions by, among other offenses, pursuing loss

mitigation options contemporaneously with active foreclosure proceedings." (ECF No. 1, PageID.19.)

The Court starts with Rader's claims that Ditech and Freddie Mac failed to properly respond to his completed loss mitigation application prior to foreclosure, and that they foreclosed despite the fact that Rader was working toward (or was in fact granted) a loan modification.

Ditech and Freddie Mac say Rader's loss-mitigation claims fall apart because Regulation X only requires that servicers review a loss mitigation application if it is submitted more than 37 days prior to the foreclosure sale. 12 C.F.R. § 1024.41(c)(1)(i). And "there is no factual basis in [Rader's complaint] for a finding that [Rader] submitted a complete loss mitigation application more than 37 days before the originally scheduled sheriff's sale on October 27, 2016." (ECF No. 19, PageID.332.)

The Court agrees that Rader's allegations are incomplete. Outside of certain exceptions that do not apply here, Section 1024.41(g)(2) prohibits a servicer from "mov[ing] for foreclosure judgment or order of sale, or conduct[ing] a foreclosure sale" if "a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale." The public records reveal that the date of the foreclosure sale was originally scheduled for October 27, 2016. (ECF No. 19-7.) While Rader alleges that the publication of the first foreclosure notice was "September 28, 201[6]," (ECF No. 1, PageID.20), the proper date appears to be September 23, 2016. (ECF No. 19-6, PageID.369.) Rader pleads that he "at all times provided all documents requested by [Ditech]" and that "[o]n September 2016 the parties were actively engaged in loan modification and making their TPP." (ECF. 1, PageID.20.) But, even taking these factual allegations as true, without knowing the date of Rader's completed loss mitigation

8

application, this RESPA claim is not plausible. *See Wiggins v. Ocwen Loan Servicing, LLC*, No. 15-14238, 2017 WL 476384, at *4–5 (E.D. Mich. Feb. 6, 2017), *aff'd*, 722 F. App'x 415 (6th Cir. 2018).

Rader's "dual tracking" allegations are also deficient. Indeed, another court in this District dismissed virtually identical claims in another case brought by Rader's attorney. In *Mrla v. Fed. Nat'l Mortg. Ass'n*, the plaintiff, too, alleged that defendants engaged in "'dual tracking,' i.e., 'pursuing loss mitigation options contemporaneously with active foreclosure proceedings" . . . and (ii) that Defendants foreclosed 'despite the fact that a loan modification agreement had been reached between the parties and Plaintiff was in good standing under the loan modification agreement[.]'" No. 15-13370, 2016 WL 3924112 (E.D. Mich. July 21, 2016). The court found that these claims "could not coexist with each other." *Id*. at *4. The court reiterated "that [Federal] Rule 8(d)(3)'s 'alternative pleadings rule' does not cover inconsistent assertions of fact when the pleader holds the knowledge of which of the inconsistent facts is the true one." *Id*. (citations omitted). This court agrees with the *Mrla* court that "[w]hen inconsistent factual allegations are made for reasons other than the pleader's uncertainty as to which allegation was true, dismissal is appropriate." *Id*.

Additionally, Rader's claims that he was working toward or was in fact granted a loan modification "precludes an allegation that [Rader] suffered damages" as a result of Ditech's alleged failure to respond to his loss mitigation application. *See id*. at *4. So Rader's inconsistent dual tracking claims likewise must be dismissed.

Rader also alleges that Ditech and Freddie Mac have a pattern and practice of violating RESPA by pursuing loss mitigation options while simultaneously moving forward on a foreclosure. Ditech and Freddie Mac argue that this allegation simply states a legal conclusion and should be dismissed. The Court agrees. The allegations in Rader's complaint pertain only to his

9

individual dealings with Ditech. He makes no other factual allegations that would make this pattern-and-practice claim plausible. *See Houle v. Green Tree Servicing, LLC*, No. 14-14654, 2015 WL 13021802 (E.D. Mich. July 1, 2015).

Lastly, Defendants correctly point out that Rader's claim that foreclosure proceedings were initiated less than 120 days from the alleged delinquency on the mortgage in contravention of 12 C.F.R. § 1024.41 does not allege any actual damages. (ECF No. 19, PageID.334–335; ECF No. 1, PageID.20.) Rader also does not plead the date of his delinquency, so there is not a sufficient factual basis for this claim.

So as currently pled, Rader's RESPA allegations fail to state a claim upon which relief may be granted.

**3.**

Ditech and Freddie Mac next argue that the remainder of Rader's claims—Truth In Lending Act, breach-of-contract, fraudulent-misrepresentation, slander-of-title, declaratory-relief and equitable-mortgage —all fail to state a claim upon which relief can be granted. (*See* ECF No. 19.)

Rader did not address this argument in his response. (*See* ECF No. 34.) So the Court will dismiss these claims. *See Pientack*, 2013 WL 5372880, at *6.

**B.**

The Court next moves to CMI's motion to dismiss.

First and foremost, CMI argues that the claims against it should be dismissed because CMI's interest in the mortgage and property ended in August 2016 when it assigned the mortgage and servicing rights to Ditech. (ECF No. 20, PageID.451.) Because it had no interest at the time of the foreclosure and it was not the foreclosing entity, it cannot be liable for any wrongful-

foreclosure claims. To this, Rader has no clear response. (*See* ECF No. 34.) Indeed, Rader states that Ditech commenced the foreclosure proceedings against the property. (ECF No. 34, PageID.515.) So the Court will dismiss the wrongful-foreclosure claims against CMI.

CMI argues that the only claims that *could* apply to it are Rader's claims that CMI failed to notify Rader when his mortgage was transferred and his servicer changed in violation of 15 U.S.C. § 1601 *et seq*. and 12 U.S.C. § 2605 *et seq*.

But these claims fail as well. Section 1641(g)(1) of Title 15 requires only that the *new* assignee of the debt notify the borrower. So CMI could have only violated this statute shortly after it became the mortgagor in October 2014. And any claim Rader could have about CMI's conduct at that time would be time barred because the applicable one-year statute of limitation has long passed. 15 U.S.C. § 1640(e). As to the claim about the servicing of the mortgage, 12 U.S.C. § 2605(b)(2)(a), CMI contends it did provide Rader with notice when the servicing rights in the mortgage were transferred to Ditech in July 2016. (ECF No. 20, PageID.452–453.) And while CMI appears to rely on a letter outside the confines of the pleadings, Rader's response does not mention this claim at all. Thus, any claim he brought against CMI pursuant to this statute will be dismissed. *See Pientack*, 2013 WL 5372880, at *6.

In short, all claims against CMI will be dismissed.

**IV.**

For the stated reasons, Ditech and Freddie Mac's motion to dismiss (ECF No. 19) and CMI's motion to dismiss (ECF No. 20) are granted.

But Rader will be given 14 days from the entry of this opinion and order to file an amended complaint on his RESPA claims, if warranted.

IT IS SO ORDERED.

11

                                                  s/Laurie J. Michelson
                                                  LAURIE J. MICHELSON
                                                  UNITED STATES DISTRICT JUDGE

Date:  December 14, 2018

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, December 14, 2018, using the Electronic Court Filing system and/or first-class U.S. mail.

                                                  s/William Barkholz
                                                  Case Manager